**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CASE NO. ______________**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

TERRANCE P. BERLAND and DAVID MICHAEL SCALZO,

Defendants.
_________________________________/

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## I. INTRODUCTION

1. The Commission brings this action against Defendants Terrance P. Berland ("Berland") and David Michael Scalzo ("Scalzo") (collectively, the "Defendants") to enjoin them from committing further violations of Section 17(a)(2) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a)(2).

2. From April 2021 through November 2021 (the "Relevant Period"), Berland, chief executive officer ("CEO") and minority owner, and Scalzo, board member and majority owner, of non-party Violet Defense Group, Inc. ("Violet Defense Group" or the "Company") raised approximately $13 million from 88

investors in the offer and sale of Violet Defense Group's securities. Violet Defense Group was a photonics company with patented ultraviolet technology that purported to disinfect air and surfaces to protect against the spread of the Covid-19 virus and other viruses.

3. During the Relevant Period, Berland and Scalzo negligently made material misrepresentations while soliciting investors concerning Violet Defense Group's projected 2021 revenues. They repeatedly represented that the Company was on track to achieve between $15 and $18 million in revenue in 2021. However, by no later than August 2021, Berland and Scalzo should have known that these representations were inaccurate because the Company's sales and royalty revenues had materially declined for several preceding months. Ultimately, Violet Defense Group generated only $5.77 million in 2021.

4. From August to November 2021, Berland and Scalzo also negligently misrepresented the Company's planned use of investor proceeds. While soliciting investors, they represented that 10% of investor funds would be used for the Company's largest subsidiary's marketing and branding. By no later than the beginning of September 2021, however, Berland and Scalzo should have known that its largest subsidiary had committed significantly more investor funds to a three-year National Association for Stock Car Auto Racing ("NASCAR") team

sponsorship, and they raised more than $8.3 million from investors after execution of the NASCAR sponsorship commitment.

5. Further, between August and October 2021, Violet Defense Group distributed to prospective investors securities purchase agreements stating that no circumstances have resulted or could reasonably be expected to result in a material adverse effect on the Company's financial condition. At the time these agreements were distributed, Berland and Scalzo should have known that Violet Defense Group's deteriorating revenues and significant, undisclosed marketing commitments contradicted those statements.

6. By engaging in this conduct, Berland and Scalzo have violated and unless enjoined are reasonably likely to continue violating Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2). Among other relief, the Commission seeks permanent injunctions and civil money penalties against Defendants.

## II. DEFENDANTS

7. **Berland** resides in Seattle, Washington. Berland was Violet Defense Group's CEO from 2019 until his termination by Scalzo in February 2022 and was a minority owner of the Company. During the Relevant Period, Berland ran Violet Defense Group's operations.

8. **Scalzo** resides in Orlando, Florida. Scalzo joined Violet Defense Group's board of directors in July 2020 and became CEO and President in 2022. As

the majority owner via his private equity firm, a board member, and the board secretary of Violet Defense Group during the Relevant Period, Scalzo directed many aspects of the Company's operations and approved or controlled investor communications. In addition, Scalzo and other board members had to approve any Company transactions greater than $100,000.

## III. RELATED ENTITY

9. **Violet Defense Group** is a now administratively dissolved Delaware corporation formed in 2016 with its principal place of business in Orlando, Florida. During the Relevant Period, Violet Defense Group operated two wholly owned subsidiaries, including Violet Defense LLC, which sold germ-killing technology and generated approximately 98% of Violet Defense Group's revenues in 2021. Violet Defense Group sold products that disinfected air and surfaces to protect against the spread of the Covid-19 virus and other viruses. In 2024, Violet Defense Group's board of directors voted unanimously to wind down all operations. The Company was administratively dissolved on January 30, 2025.

## IV. JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a).

11. The Court has personal jurisdiction over Defendants and venue is proper in the Middle District of Florida in its Orlando Division because: (a) many

events and omissions giving rise to the violations of the Securities Act occurred in this District; (b) Scalzo resides in Orlando, Florida; (c) during the Relevant Period, Berland resided in Orlando, Florida; and (d) the Company's principal place of business was in Orlando, Florida.

12. In connection with the conduct alleged in this Complaint, including the offer and sale of Violet Defense Group's securities, Scalzo and Berland, directly and indirectly, alone or in concert with others, made use of the means or instruments of transportation or communication in interstate commerce and the use of the mails.

## V. FACTUAL ALLEGATIONS

### A. Violet Defense Group's Business

13. Violet Defense Group's primary business involved the manufacture and sale of its patented ultraviolet technology that purported to disinfect air and surfaces against Covid-19 and other viruses, and was marketed for use in commercial facilities such as office buildings, sports arenas, and healthcare facilities.

14. Interest in Violet Defense Group's ultraviolet technology grew during the Covid-19 pandemic and, as a result, the Company generated about $11 million in revenues in 2020.

15. At the time, then-CEO Berland ran Violet Defense Group's daily operations under the supervision of its board of directors, including Scalzo.

**B. Violet Defense Group's Securities Offering**

***i. The Series B Round and Investor Deck***

16. In or about March 2021, Violet Defense Group launched an offering of stock in Violet Defense Group (the "Series B Round") to raise capital. The shares sold in the Series B Round are securities under the Securities Act, which explicitly defines a "security" to include stock, among other instruments. Further, the Company's offering materials described the shares offered as securities.

17. Berland and Scalzo prepared, or in some cases reviewed and approved, offering documents provided to prospective investors, including an Investment Overview Deck dated March 2021 (the "Investor Deck"), that contemplated raising $30 million for Violet Defense Group's Series B Round.

18. Violet Defense Group engaged a placement agent (the "Placement Agent"), a registered broker-dealer, in April 2021, to find and introduce accredited investors interested in the Series B Round. The Placement Agent routinely received information from Berland and Scalzo and conveyed that information to potential investors.

### *ii. Funds Raised from Investors*

19. During the Relevant Period, Violet Defense Group raised approximately $13 million from 88 accredited investors in the Series B Round. Investors purchased Company shares worth $4,751,000 on August 31, 2021, and $8,310,000 on November 1 and November 12, 2021, for a total raise of $13,061,000. Violet Defense Group's bank account received these investor funds on those dates.

### *iii. Securities Purchase Agreements Provided to Investors*

20. After investors sent their investment capital, representatives of Violet Defense Group, which at times included Berland and Scalzo, provided investors with securities purchase agreements for execution. The first was dated August 31, 2021 (the "August Series B SPA"), and the second was dated October 2021 (the "October Series B SPA").

21. Among other things, the August Series B SPA represented: "Except as set forth on Subsection 2.15 of the Disclosure Schedule, since March 31, 2021, there have been no events or circumstances of any kind that have had or could reasonably be expected to result in a Material Adverse Effect."

22. Similarly, the October Series B SPA represented: "Except as set forth on Subsection 2.15 of the Disclosure Schedule, since June 30, 2021, there have been no events or circumstances of any kind that have had or could reasonably be expected to result in a Material Adverse Effect."

23. Both documents defined a "Material Adverse Effect" as "a material adverse effect on the business, assets (including tangible assets), liabilities, financial condition, property or results of operations of the Company."

24. The Series B Round closed on or about November 12, 2021.

#### *iv. The Amended Securities Purchase Agreement and Disclosure of the NASCAR Agreement*

25. After the closing, on or about November 22, 2021, Series B investors were provided with a Series B Securities Purchase Agreement dated November 1, 2021 (the "November Series B SPA"), which contained material changes to the Disclosure Schedules attached to the August and October Series B SPAs previously provided to investors.

26. The November Series B SPA disclosed that Violet Defense LLC had entered into a Sponsorship Letter Agreement with a NASCAR team dated September 1, 2021 (the "NASCAR Agreement"), obligating the Company to pay the NASCAR team $5.45 million over the next three years.

### C. Berland's and Scalzo's Materially Misleading Statements

#### *i. Materially Misleading Statements to Prospective Investors and Investors About Projected Revenues and Failure to Correct Projected Revenues*

27. From April 2021 through November 2021, Berland and Scalzo disseminated the Company's revenue projections directly to prospective investors via telephone calls and email and through the Placement Agent.

28. Specifically, Berland and Scalzo repeatedly represented from as early as April 2021 through November 2021 that the Company was on track to reach anywhere between $15 and $18 million in revenues for 2021.

29. The $15 to $18 million revenue target was important to investors when deciding to invest in Violet Defense Group's Series B Round offering.

30. In an April 15, 2021, email to the Placement Agent's president, Berland wrote that while Violet Defense Group was "not in a position to start putting hard projections out into the market," the Company can say internally that "we are targeting $15 million as our baseline for 2021, which is achievable."

31. In another email to the Placement Agent's president dated July 7, 2021, copying Scalzo, Berland wrote: "we have set a Board target of $15 million in revenue in order for Company employees to receive their bonus."

32. At some point in August 2021, while investors purchased over $4.7 million worth of Series B Round shares, these projections became false and misleading. By August 31, 2021, Violet Defense Group was not remotely on track to generate its initially projected $15 million in revenues in 2021. The Company had only generated approximately $4.7 million in revenue by then, and its revenue had been declining month-over-month for the preceding four months (May to August 2021).

33. Berland and Scalzo should have known by August 2021 that the Company was not on track to reach its $15 million revenue projection. In fact, Berland, Scalzo, and the board of directors regularly met and discussed the financial condition of the Company.

34. For example, during a July 21, 2021, board of directors meeting, Berland reviewed and discussed the Company's weak and declining financials for the second quarter of 2021 (April-June) with Scalzo and other board members. Berland also provided updates to the board on the Company's low sales over the preceding six months.

35. Despite learning about the Company's weak and declining sales, Berland and Scalzo thereafter sent investors the August Series B SPA that incorrectly stated there had been no "Material Adverse Effect" to the Company's financial condition since March 31, 2021.

36. Berland and Scalzo also kept raising investor funds and disseminating rosy revenue projections for Violet Defense Group. In September 2021, the Placement Agent, based on information from Violet Defense Group, told a prospective investor that the Company was on track to generate $17-18 million in revenues for 2021. In October 2021, Berland and Scalzo were still telling investors that the Company was doing well and was on track to achieve $15 million in revenue.

37. Yet, instead of correcting the revenue projections, Berland and Scalzo sent investors the October Series B SPA that incorrectly stated there had been no "Material Adverse Effect" on the Company's financial condition since June 30, 2021.

38. As they continued to solicit investors through November 2021—raising an additional approximately $8.3 million worth of Series B Round shares—Berland and Scalzo did not disclose Violet Defense Group's weak and declining revenues. The Company's revenues were only approximately $219,000 in September; $229,000 in October; and $153,000 in November. Tellingly, by November 2021, Violet Defense Group's sales had been steadily declining for the preceding six months (May to October 2021).

39. Given the revenue trajectory and the year-to-date revenues, it was highly unlikely the Company would achieve the $15-$18 million revenue targets for the year. Yet, Berland and Scalzo never corrected the revenue projections they gave to investors, nor did they disclose to them that the revenue projections had become unsupportable. They failed to exercise reasonable care by not disclosing that information. Violet Defense Group ultimately only generated $5.77 million in revenues in 2021.

### *ii. Materially Misleading Statements to Prospective Investors and Investors About the Use of Investor Funds Spent on Marketing*

40. Violet Defense Group shared the Investor Deck with most prospective investors starting in April 2021.

41. Importantly, the Investor Deck represented that 16% of the investor funds from the Series B Round would be used for marketing and branding across all divisions, and 10% of investor funds would be used for marketing and branding for the Company's largest subsidiary, Violet Defense LLC.

42 Negotiations between the Company's subsidiary, Violet Defense LLC, and the NASCAR team began by July 2021, before the August and October Series B SPAs were distributed to investors, and before the Series B Round offering closed in November 2021.

43. Both Berland and Scalzo were aware of the negotiations with the NASCAR team. Berland and Scalzo were included in a Teams meeting invitation circulated on July 28, 2021, to discuss the potential sponsorship and, on August 26, 2021, Berland sent Scalzo a text message asking Scalzo to approve moving forward with the NASCAR Agreement.

44. On September 1, 2021, the Company's subsidiary executed the NASCAR Agreement. Under its terms, Violet Defense Group, through its subsidiary, would become a primary sponsor of a NASCAR race car team at certain races during the 2021, 2022, and 2023 seasons in exchange for payments

from Violet Defense Group totaling approximately $5.45 million: $1.6 million in 2021, $1.9 million in 2022, and $1.950 million in 2023.

45. Berland and Scalzo did not disclose the Company's corresponding $5.45 million NASCAR Agreement obligation to investors until after they invested. Indeed, Berland, Scalzo, and the Company first notified investors about the NASCAR Agreement when they distributed the November Series B SPA to investors on or about November 22, 2021.

46. This use of investor proceeds was inconsistent with what Defendants disclosed to investors and prospective investors. Investors and prospective investors would have wanted to know when deciding to invest in the Company that the NASCAR Agreement financial commitment significantly exceeded the 16% for marketing and branding across the whole Company, and the 10% allocated to the subsidiary, Violet Defense LLC, that was disclosed to them. The commitment materially exceeded the marketing allocation represented in the Investor Deck and was never corrected—a failure to exercise reasonable care.

47. Critically, the $5.45 million committed to the NASCAR Agreement was nearly 42% of the proceeds raised from Series B Round investors during the Relevant Period.

## VI. CLAIM FOR RELIEF

**COUNT I**
**Violations of Section 17(a)(2) of the Securities Act**
**(Against Berland and Scalzo)**

48. The Commission realleges and incorporates by reference paragraphs 1 through 47 above.

49. By engaging in the conduct described above during the Relevant Period, Berland and Scalzo, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material fact or omissions to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50. By reason of the foregoing, Berland and Scalzo, directly and indirectly, have violated, and unless enjoined are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## VII. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court find Berland and Scalzo committed the violations alleged in this Complaint, and:

**A. Permanent Injunctions**

Issue permanent injunctions enjoining Berland and Scalzo, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any of them from violating Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

**B. Civil Monetary Penalties**

Enter an order directing Berland and Scalzo to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d).

**C. Further Relief**

Grant any other relief that the Court deems necessary and appropriate.

## VIII. DEMAND FOR JURY TRIAL

The Commission hereby demands a trial by jury on all issues in this action so triable.

Dated: October 19, 2026

Respectfully submitted,

By: */s/ Brian Lechich*

Brian Lechich
Senior Trial Counsel
Fla. Bar No. 084419
Direct Dial: (305) 510-9133
Email: LechichB@sec.gov
*LEAD COUNSEL*

Brian Theophilus James
Senior Counsel
Bar No. 0431842
Direct Dial: (305) 982-6335
Email: JamesB@sec.gov

Russell Koonin
Acting Supervisory Trial Counsel
Fla. Bar No. 0474479
Direct: (305) 982-6390
Kooninr@sec.gov

Attorneys for Plaintiff
**Securities and Exchange Commission**
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6300